UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

STEVEN PAUL HEITZMAN,

        Plaintiff,

        v.

COLETTE PETERS, et al.,

        Defendants.

1:13-cv-00730-CL

REPORT AND
RECOMMENDATION

CLARKE, Magistrate Judge.

    Plaintiff, formerly an inmate in the custody of the Oregon Department of Corrections, filed an Amended Complaint (#32) alleging claims under the Eighth Amendment, the Ninth Amendment, the Oregon State Constitution, the Prison Rape Elimination Act (PREA), various ODOC polices and ORS 71.2030. Plaintiff alleges that his rights were violated when he was allegedly "touched inappropriately" by defendant Philip Jackson. Plaintiff alleges that he suffered "tremendous mental anguish over this incident" and

Page 1

was fired from his job and transferred to a different institution because he filed grievances about defendant Jackson's conduct. Complaint (#2) p. 4-5.

Defendants now move for summary judgment (#42).

The relevant facts are as follows. On February 22, 2012, plaintiff was an inmate in the custody of the Oregon Department of Corrections working in the Physical plant at the Warner Creek Correctional Facility (WCCF). Defendant Jackson was employed by the ODOC as a Facilities Energy Technician supervising inmate work crews. On that date, defendant Jackson went to the Physical Plant tool room to get a tool bag. The door to the tool room is a Dutch door, and the top was open. Plaintiff was blocking the door by leaning over the closed bottom half of the door talking to an inmate inside the tool room. Jackson approached plaintiff from behind, told plaintiff that plaintiff needed to move, and simultaneously tapped or "patted" plaintiff on the right buttocks. Plaintiff moved and Jackson entered the room to retrieve the tool bag. Plaintiff told Jackson that the contact was "inappropriate."

Ray Wing, who was employed by ODOC as a Facilities Maintenance Specialist was in the tool room when the incident occurred and saw Jackson tap plaintiff and heard plaintiff say "Well that was inappropriate." Mr. Jackson apologized and said "I didn't look where I was tapping." Plaintiff replied "Well maybe you should." Declaration of Ray Wing (#45) p. 2

Page 2

Plaintiff later asked whet he should do about what happened. Wing advised plaintiff: "If you think it's a problem, you need to file a grievance." Plaintiff expressed some concern to Wing that there would be repercussions if he filed a grievance, but Wing assured plaintiff there would not be any. Wing did not believe that Jackson touched plaintiff in a sexual manner. Id.[1]

On February 23, 2012, plaintiff filed a grievance concerning the incident with defendant Jackson which was investigated by Lieutenant Helling, PREA liason for WCCF. Lt. Helling reported his findings to defendant Hammonds.

Defendant David Hammonds was the acting Physical Plant Manager and a member of the Sexual Assault Response Team for WCCF. On February 27, 2012, Hammonds was informed of a possible Prison Rape Elimination Act (PREA) incident involving plaintiff. Hammonds reviewed the incident and concluded that it was a "training issue."

On February 28, 2012, plaintiff reported to his work assignment at the Physical Plant and then requested to go to the medical department because he was sick. Plaintiff complained that he could not work with defendant Jackson and was released from the Physical

---

[1] In plaintiff's Menorandum in Support, plaintiff describes two prior incidents where he was made to feel uncomfortable by defendant Jackson's contact or verbal comments. Although referred to in plaintiff's amended complaint, neither of these alleged incidents are alleged as claims and are not relevant to the issues before the court. Defendant Jackson states in his declaration: "I do not know what [plaintiff] is referring to when he claims there were prior incidents." Declaration of Phillip Jackson (#44) p. 3

Plant his duties to return to his housing unit.

Subsequently, Hammonds met with plaintiff. According to Hammonds, plaintiff told Hammonds the he (plaintiff) could not work around Jackson unless Hammonds could instruct Jackson not to look at him (plaintiff) or pat him down. Hammonds explained to plaintiff that this was not possible, because each Physical Plant staff member is required to supervise, direct work, and search all inmates who work in the Physical Plant. Declaration of David Hammonds (#48) p. 3.

Hammonds told plaintiff that if plaintiff did not feel comfortable working around Jackson, Hammonds would remove plaintiff from his inmate work assignment and notify his counselor. Plaintiff was removed from his work assignment at the physical Plant. Plaintiff's removal from the Physical Plant inmate work assignment did not include any form of "daily fail," sanction or disciplinary action. Id.

Plaintiff disputes Hammonds account of their conversation and contends that he told Hammonds that:

> I didn't want to lose my job and there must be some solution to this problem. I told David Hammonds that there are three guards that perform pat downs at the end of the day and I could get into a line that Mr.Jackson was not performing pat downs. I told David Hammonds that I would not even look at Phillip Jackson. David Hammonds has twisted my words to cover up this incident.

Memorandum in Support (#55) p. 4.

This slightly different characterization of the conversation

between plaintiff and Hammonds does not constitute a disputed issue of material fact for purposes of summary judgment because what was said is irrelevant to plaintiff's claim that he was "fired" for *filing a grievances*. Amended Complaint (#32) p. 5. Hammonds states that the removal of plaintiff from his inmate work assignment "was done in effort to not cause plaintiff further discomfort in his eyes." Declaration of David Hammonds (#48) P. 3.

On February 28, 2012, and again on March 4, 2012, plaintiff filed grievances alleging that defendant Hammons improperly removed from his work assignment at the Physical Plant.

On March 14, 2012, plaintiff was transferred from WCCF to the Oregon State Correctional Institution. On March 15, 2012, plaintiff was transferred to the Columbia Correctional Institution where he remained until he was paroled on November 30, 2012. Plaintiff was transferred at the request of Behavioral Services Staff.

Defendants contend that they are entitled to summary judgment "for three primary reasons." Memorandum in Support (#43) p. 6.

> (1) plaintiff's claims against Defendants ODOC and Risk Management and plaintiff's state law claims are barred by the Eleventh Amendment; (2) Plaintiff cannot state a claim under the Ninth Amendment; and (3) PREA does not provide a private right of action.
>
> * * *
> [Defendants further contend] Jackson's conduct was isolated, brief, and not severe, and thus failed to meet Eighth Amendment standards. And to the extent that the court may interpret plaintiff complaint as alleging a First Amendment claim against Hammonds, Hammonds removed

Page 5

>      plaintiff from his inmate work assignment for legitimate,
> non-retaliatory reasons, and neither Hammonds nor nay
> other defendant in this lawsuit was responsible for
> plaintiff's transfer.

Id.

*Respondeat superior*: Plaintiff apparently seeks to hold defendants Peters and Angelozzi liable under a theory of *respondeat superior*.

It is well settled that respondeat superior is not a proper basis for liability under 42 U.S.C. § 1983. Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 691-694 (1978); Rizzo v. Goode, 423 U.S. 362, 375-76 (1976); King v. Atiyeh, 814 F.2d 565, 568 (9th Cir. 1987). To establish a § 1983 claim against an individual defendant, a plaintiff must establish personal participation by the defendant in the alleged constitutional deprivation. Ashcroft v. Iqbab, 129 S.Ct. 1937 (2009).

A "supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989), citing Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 680-81 (9th Cir. 1984). See also, Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (supervisory liability only when a) actual or constructive knowledge of a pervasive and unreasonable risk of injury; b) deliberate indifference to or tacit authorization of the practice; and c) an affirmative causal link between inaction and the injury). Supervisory officials may also be liable if they

"implement a policy so deficient that the policy `itself is a repudiation of constitutional rights' and is `the moving force of the constitutional violation.'" Redman v. County of San Diego, 924 F.2d 1435, 1446 (9th Cir. 1991), cert. denied, 112 S. Ct. 972 (1992).

Plaintiff has not alleged any facts that would establish defendants Peters or Angelozzi personally participated in the alleged conduct he complains of or any facts that would subject these defendants to liability.

Eleventh Amendment: A state or its officials or agencies may not be sued by private individuals in federal court unless the state has unequivocally consented to that action, or Congress has unequivocally expressed its intent under the Fourteenth Amendment to waive the immunity of the States. Board of Trustees of University of Alabama v. Garrett, 531 U.S. 356 (2001); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996); see also, Quern v. Jordan, 440 U.S. 332 (1979); Edleman v. Jordan, 415 U.S. 651, 673 (1984); Pennhurst State School and Hospital v. Halderman, 465 U.S. 89 (1984). The Eleventh Amendment otherwise bars any such action regardless of the nature of the relief sought. Cory v. White, 457 U.S. 85 (1982); Brooks v. Sulpher Springs Valley Elec. Co-Op, 951 F.2d 1050, 1053 (9th Cir. 1991). Individual defendants share in the Eleventh Amendment immunity afforded states and state agencies where the individuals are sued in their official

capacities because such suits "are, in essence, actions against the government entity of which the officer is an agent." <u>Mitchell v Los Angeles Community College Dist.</u>, 861 F.2d 198, 201-02 (9th Cir. 1999). Under the "arm of the state" doctrine, a state entity and its officers in their official capacities share the state's sovereign immunity because "'the state is the real party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials [or state entities] are nominal defendants.'" <u>Durning v. Citibank, N.A.</u>, 950 F.2d 1419, 1423 (9th Cir. 1991) (*quoting* <u>Ford Mtor Co. V. Dep't of Treasury</u>, 323 U.S. 459, 464 (1945)). A suit against a state officer in his official capacity is effectively considered a suit against the official's office, and therefore, it "is no different than a suit against the State itself." <u>Will v. Michigan Dep't of State Police</u>, 419 U.S. 58, 71 (1989).

Thus, plaintiff's claims against the Oregon Department of Corrections and the Department of Administrative Services (Risk Management) are barred by the Eleventh Amendment. In addition, to the extent that plaintiff seeks to hold the individual defendants liable in their official capacities,[2] plaintiff's claims are barred by the Eleventh Amendment.

Plaintiff's state law claims under the Oregon Constitution,

---

[2] Plaintiff does not specify whether he is suing defendants in their official or individual capacities.

ODOC policies, and ORS 71.2030 are likewise barred by the Eleventh Amendment because the individually named defendants must be dismissed from plaintiff's state law claimx and the State of Oregon substituted in their place. ORS 30.265(1) (the "sole cause of action for any tort of officers, employees or agents of a public body acting within the scope of their employment or duties * * * shall be an action against the public body only."); Demaray v. Dept. of Environmental Quality, 127 Or. App. 494, 502 (1994). Upon substitution of the State of Oregon as the sole defendant to the state claims, the claims must be dismissed pursuant to the Eleventh Amendment.[3]

Ninth Amendment: Plaintiff alleges that defendants violated his rights under the "9th Amendment."

The Ninth Amendment provides: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." Thus, the Ninth Amendment protects rights not enunciated in the first eight amendments. See, Griswold v. Connecticut, 381 U.S. 479 (1965). However, "the Ninth Amendment has never been recognized as

---

[3] Even if plaintiff's state law claims were not barred by the Eleventh Amendment, the Oregon Constitution does not provide for a private right of action to sue for money damages. Hunter v. City of Eugene, 309 Or. 298, 303-04, 787 P.2d 881 (1990). In addition, the ODOC policies cited by plaintiff do not provide him with an independent cause of action and "ORS 71.2030 - which distinguishes leases from security interests - has no application to this case.

independently securing any constitutional right, for purposes of pursuing a civil rights claim." Stranberg v. City of Helena, 791 F.2d 744, 749-49 (9th Cir. 1986)(citing cases).

Prison Rape Elimination Act (PREA): Plaintiff alleges that defendants' conduct violated the Prison Rape Elimination Act. However, it is well established that there is no private right of action under PREA. Pope v. Oregon Department of Corrections, Case No. 3:10-cv-00632-KI, 2012 WL 186601, *4 (D. Or. May 22, 2012) (citing) Porter v. Jennings, Case No. 1:10-cv-01811-AWI-DLB PC, 2012 WL 1434986, *1 (E.D. Cal. Apr. 25, 2012) (citing numerous cases).

Retaliation: Plaintiff's allegation that he was fired from his job and transferred to another institution because he filed grievances about defendant Jackson's conduct could be construed as a First Amendment retaliation claim.

A properly pleaded complaint which alleges retaliation for the exercise of a constitutional right states a cause of action under 42 U.S.C. § 1983. Mt. Healthy City Bd. Of Ed. V. Doyle, 429 U.S. 274 (1977); McDonald v. Hall, 610 F.2d 16 (1st. Cir. 1979); Bruise v. Hudkins, 584 F.2d 223 (7th Cir. 1978). The claim must include an allegation that the plaintiff engaged in conduct that is constitutionally protected and that the conduct was a substantial or motivating factor for the defendant's action. Mt. Healy, id., at p. 287.

"A prisoner suing state prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." <u>Barnett v. Centoni</u>, 31 F.3d 813, 815-16 (9th Cir. 1994); <u>Rizzo v. Dawson</u>, 788 F.2d 527, 531 (9th Cir. 1985). The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct about which he complains. <u>Pratt v. Rowland</u>, 65 F.3d 802, 806 (9th Cir. 1995). Courts should "afford appropriate deference and flexibility to prison officials in the evaluation of proffered penological reasons for conduct alleged to be retaliatory. <u>Id</u>., at 807 (*quoting Sandin v. Conner*, 515 U.S. 472, 482 (1995)).

The nature of a retaliation claim requires that it be "regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." <u>Adams v. Rice</u>, 40 F.3d 72, 74 (4th Cir. 1994).

The record is clear that plaintiff was removed from his inmate work assignment because he told defendant Hammonds that he could not work around Jackson unless Hammonds could instruct Jackson not to look at plaintiff or pat him down. Defendant Hammonds could not accommodate plaintiff's "stipulations" in this regard due to legitimate institution security, order and discipline requirements.

Plaintiff has not met his burden of pleading and proving the absence of a legitimate penological reason for his removal from his inmate work assignment at the Physical Plant. <u>Pratt v. Rowland</u>, *supra*.

None of the defendants named in this action were responsible for plaintiff's transfer to OSCI. Plaintiff was transferred at the request of Behavioral Health Services (BHS) staff and not because he filed grievances. Hammonds Declaration (#46) p. 5, and Attachment 5.

<u>Eighth Amendment:</u> Plaintiff alleges in his amended complaint that he was "touched inappropriately" by defendant Jackson. Amended Complaint (#32) p. 4. In a grievance filed February 23, 2012, plaintiff stated that Jackson "patted me on the butt," and that plaintiff believed it was "sexual touching." Hammond Declaration (#46) Attachment 2.

The circumstances giving rise to plaintiff's claim are described above. The record reflects that the brief contact was incidental to asking plaintiff to move. Although plaintiff alleges that Ryan Wing told plaintiff he saw the "inappropriate touching" and believed it "was in a sexual manner," Amended Complaint (#32) p. 4, Mr. Wing's Declaration states that he did not tell plaintiff that he witnesses Jackson touch plaintiff in a sexual manner "because I did not. "What I told Inmate Heitzman was that if he believed there was a problem, then he needed to file a grievance."

Page 12

Declaration of Ray Wing (#45) p.2.

The Eighth Amendment does not apply to every deprivation or even every unnecessary deprivation, suffered by a prisoner, but only that narrow class of deprivation "serious injury inflicted by prison officials acting with a culpable state of mind." Hudson v. McMillian, 503 U.S. 1 (1992).

There is a *de minimis* level of imposition with which the Constitution is not concerned. Ingraham v. Wright, 430 U.S. 651, 674 (1977). Extreme deprivations are required to make out a conditions of confinement claim. Only those deprivations denying the 'minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S.1 (1992) *quoting* Rhodes v. Chapman, 452 U.S. 337 (1981) and Wilson v. Seiter, 501 U.S. 194 (1991).

It is unfortunate that plaintiff felt that defendant Jackson's pat was "sexual" and was made to feel uncomfortable by Jackson's actions. However, plaintiff's sensitivity to being touched does not render an innocuous contact sexual. Plaintiff has not alleged facts that would establish a risk of "serious harm" to his health or safety or any facts that to rise to the level of an Eighth Amendment violation. Clemets v. Gomez, 298 F.3d 898 (9th Cir. 2002).

Courts have found that "isolated episodes of harassment and

touching" do not meet the objective requirement of an Eighth Amendment violation. *See*, Smith v. Los Angeles County, Case No. CV-07-7028-VAP, 2010 WL 2569232, *5 (C.D. Cal Apr. 22, 2010); adopted by 2010 WL 2572570 (C.D. Cal. 2010); *aff'd*, 452 Fed. Appx. 768 (9th Cir. 2011).

In Watison v. Carter, the Ninth Circuit affirmed the dismissal of an inmate's Eighth Amendment sexual harassment claim against a correctional officer who allegedly entered plaintiff's cell while plaintiff was on the toilet, rubbed his thigh against plaintiff's thigh and "began smiling in a sexual contact (sic)," then left plaintiff's cell laughing. 668 F.3.rd 1108, 1112-14. (9th Cir. 2012). The Ninth Circuit rules that "[t]he 'humiliation' {plaintiff] suffered from the incident ... does not rise to the level of severe psychological pain required to state an Eighth Amendment claim." Id. at 1113. Moreover, the Ninth Circuit found that the officer's alleged wrongdoing was not objectively harmful enough to establish a constitutional violation. Id. at 1114.

In Berryhill v. Schriro, 137 F.3d 1073 (9[8th] Cir. 1998), (discussed with approval by the Ninth Circuit in *Watison*) the plaintiff alleged that prison maintenance employees "embarass[ed] him" in violation of the eighth Amendment when one of them "grabbed him by the shoulders while [another] grabbed his buttocks with one hand briefly" and a third "grabbed Berryhill's buttocks for a moment." Id. 1074-75.

The Eight Circuit found no Eighth Amendment violation because "there is no evidence that Berryhill suffered anything more than a brief unwanted touch on his buttocks" and "[i]t would be a distortion *** to characterize the conduct in this case as sexual assault." Id. at 1076. Berryhill's "humiliation" did not constitute "objectively serious injury (either physical or psychological)." Id.

As the Ninth Circuit noted, Berryhill is "consistent with Supreme Court precedent on sexual harassment. The Supreme Court has held that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to a discriminatory [hostile environment]. Watison, supra 668 F.3d at 1113, n. 1.

The circumstances of the present case are far less egregious than the facts of Watison and Berryhill. Here plaintiff was subjected to a brief, over-the clothes contact on his buttocks, incidental to a request that plaintiff "move, (followed by an apology). I find that these facts fail constitute a "serious injury" (physical or psychological) or rise to the level of a constitutional violation.

In addition, plaintiff has failed to allege facts showing that defendant Jackson had a state of mind functionally equivalent to "criminal recklessness," and has therefore failed to establish that defendant Jackson had a sufficiently "culpable state of mind" to

support an Eighth Amendment violation.  see <u>Farmer v. Brennan</u>, *511 U.S. 825, 847 (1994)*.

<u>Qualified Immunity</u>: <u>Qualified Immunity</u>: The United States Supreme Court has held:

> "An official is entitled to summary judgment on the ground of qualified immunity where his or her conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Until recently courts considering an official claim of qualified immunity followed the two-step protocol established in *Saucier v. Katz*, 533 U.S. 194 (2001), which required us first to determine whether the defendant violated a constitutional right and then to determine whether that right was clearly established. *See, Pearson v. Callahan*, 555 U.S. __, 129 S.Ct. 808, 818 (2009) (overturning *Saucier* in part). In *Pearson v. Callahan*, the Supreme Court reversed this earlier rule and gave courts discretion to grant qualified immunity on the basis of the "clearly established" prong alone, without deciding in the first instance whether any right had been violated. *Id*. Thus, we may grant qualified immunity if 'the facts that a plaintiff has alleged or shown [do not] make out a violation of a constitutional right' or if 'the right at issue was [not] clearly established at the time of the defendant's alleged conduct.' *Id*. At 816, 818 (internal citations omitted)."

<u>James v. Rowlands</u>, 606 F.3d 646 (9th Cir. 2010).

As discussed above, defendants did not violate plaintiff's constitutional rights by patting him on the backside or by failing to respond appropriately to plaintiff's grievance about the incident.

However, even if plaintiff's allegations could be construed as stating a colorable Eighth Amendment claim, I find that it would not be clear to a reasonable correctional officer that

patting an inmate under the circumstances described in plaintiff's complaint and defendants' declarations would constitute cruel and unusual punishment under the Eighth Amendment or otherwise violate plaintiff's rights. *See*, Saucier v. Katz, 533 U.S. 194, 202 (2001) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to to a reasonable officer that his conduct was unlawful in the situation he confronted."). Therefore any such right was not "clearly established" and defendants are entitled to qualified immunity.

Defendants' Motion for Summary Judgment (#42) should be allowed. The Clerk of Court should be directed to enter a judgment dismissing this action. Plaintiff's Motion to Vacate Summary Judgment (#53) and Motion to Vacate Stay (#57) should be denied as moot.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the


patting an inmate under the circumstances described in plaintiff's complaint and defendants' declarations would constitute cruel and unusual punishment under the Eighth Amendment or otherwise violate plaintiff's rights. *See*, Saucier v. Katz, 533 U.S. 194, 202 (2001) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to to a reasonable officer that his conduct was unlawful in the situation he confronted."). Therefore any such right was not "clearly established" and defendants are entitled to qualified immunity.

Defendants' Motion for Summary Judgment (#42) should be allowed. The Clerk of Court should be directed to enter a judgment dismissing this action. Plaintiff's Motion to Vacate Summary Judgment (#53) and Motion to Vacate Stay (#57) should be denied as moot.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the

Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

*Any appeal from an order adopting this Report and Recommendation or judgment dismissing this case would be frivolous and not taken in good faith.*

DATED this \_6\_ day of April, 2014.

Mark D. Clarke
United States Magistrate Judge